## In the Iowa District Court
## In and for Black Hawk County

| | | |
|---|---|---|
| DERRICK AMBROSE, SR. as Executor of the Estate of Derrick Ambrose, Jr., | ) ) ) | No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORIGINAL NOTICE** |
| | ) | |
| WATERLOO, IOWA, Municipal Corporation; KYLE LAW, in his individual and official capacities, DANIEL TRELKA, in his individual capacities as Public Safety Director for the City of Waterloo, Iowa; and JOHN DOES 1-5, in their individual and official capacities, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby notified that there is now on file in the office of the above Court, a Petition in the above-entitled action, a copy of which Petition is attached hereto. The Plaintiff's attorney is Thomas P. Frerichs of the law firm of Frerichs Law Office, 106 E. 4th Street, P.O. Box 328, Waterloo, Iowa 50704, Phone (319) 236-7204, Facsimile (319) 236-7206.

You are further notified that unless, within 20 days after service of this Original Notice upon you, you serve, and within a reasonable time thereafter file, a Motion or Answer in the Iowa District Court in and for Black Hawk County, Waterloo, Iowa, judgment by default may be rendered against you for the relief demanded in the Petition.

Waynette Saul, Clerk


By: _____

Deputy Clerk of the Above Court
Black Hawk County Courthouse
316 East Fifth St.
Waterloo, IA 50703

NOTE: The attorney who is expected to represent the Defendant should be promptly advised by Defendant of the service of this Notice.

If you require the assistance of auxiliary aides or services to participate in court because of a disability, immediately call your District ADA coordinator at (319) 589-4448. if you are hearing impaired, call Relay Iowa at 1-800-735-2942.

# STATE OF IOWA JUDICIARY

**Case No.** LACV126149

**County** BlackHawk

*Case Title* D AMBROSE VS WATERLOO, IOWA ET AL

THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:
http://www.iowacourts.state.ia.us/Efile

FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16: http://www.iowacourts.state.ia.us/Efile



*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 833-3332** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 11/17/2014 03:37:10 PM



*District Clerk of* BlackHawk          *County*

/s/ Jim Mahoney

## IN THE IOWA DISTRICT COURT
## FOR BLACK HAWK COUNTY

| | |
|---|---|
| DERRICK AMBROSE, SR. as Executor of the Estate of Derrick Ambrose, Jr., <br><br>     Plaintiff, <br><br> v. <br><br> WATERLOO, IOWA, Municipal Corporation; KYLE LAW, in his official and individual capacity; DANIEL TRELKA, in his individual and official capacity as Public Safety Director for the City of Waterloo, Iowa; JOHN DOES 1-5, in their individual and official capacities, <br><br>     Defendants. | **PETITION AT LAW AND DEMAND FOR JURY TRIAL** <br><br><br> Civil No. _____ |

COMES NOW Plaintiff and in support of his Petition at Law states the following:

### INTRODUCTION

1.    In the early morning hours of November 18, 2012, Waterloo Police Officer Kyle Law shot and killed Derrick Ambrose, Jr. Derrick Ambrose, Jr. was unarmed at the time and posed no threat to either Officer Law or any other person. Defendant City of Waterloo through its Police Department failed to train and supervise Officer Law and instituted unconstitutional policies and/or customs, including ratifying systemic excessive force. All individual Defendants also engaged in a conspiracy to deprive persons, including Derrick Ambrose, Jr., of their rights to be free from excessive force under Iowa Constitution Article I, § 8 and the Fourth Amendment to the United States Constitution. The Defendants' unconstitutional acts and omissions were the moving force causing Derrick Ambrose Jr.'s death. Derrick Ambrose, Sr. is the Executor of his son Derrick Amborse, Jr.'s estate and sues for damages in that capacity.

2.    Plaintiff's First through Fourth Claims are causes of action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States against the above-named defendants, jointly and severally, and in their respective individual and official capacities.

3.    Plaintiff's Fifth and Sixth Claims are causes of action for money damages brought pursuant to the laws of the State of Iowa.

## JURISDICTIONAL STATEMENT

4.    This action arises under the laws of the State of Iowa and the Constitution of the United States particularly under the provisions of the Fourth and Fourteenth amendments to the Constitution of the United States and under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

5.    At all relevant times, the acts described herein occurred in Black Hawk County, Iowa.

## PARTIES

6.    Plaintiff Derrick Ambrose, Sr. is a citizen of the United States and of the State of Oklahoma and is the Executor of the Estate, a legal entity established in Iowa, and the Estate has always existed within the State of Iowa

7.    Defendant City of Waterloo, Iowa, is a municipal corporation located in Black Hawk County and organized under the laws of the State of Iowa.

8.    Defendant City of Waterloo, through its agents and employees is responsible for, and does in fact, hire, train, supervise, and instruct police officers in all grades in the performance of their duties.

PETITION AND DEMAND FOR JURY TRIAL

9.     The City of Waterloo is a municipality and designated as such in accordance with Chapter 670 of the Iowa Code, as such, is subject to civil suit and may be held independently or vicariously liable for the wrongful conduct of its officers, employees, agents, or ostensible agents.

10.     At all relevant times, Defendant Kyle Law was a citizen of Waterloo, Iowa and was a police officer duly appointed and employed by the City of Waterloo, Iowa and assigned to work for its Police Department.  Officer Law is alleged to have acted in his individual and official capacities and under color of state law.  At all times relevant to this Petition, Officer Law was an agent, servant and employee of Defendant City of Waterloo and was acting under the supervision of Defendant Trelka.  He is sued in his individual and official capacities.

11.     Daniel Trelka is, and was at all times relevant, either the Public Safety Director or Chief of the Waterloo Police Department.  At all times relevant hereto and in all actions described herein, Daniel Trelka was the commanding officer of Officer Law and was responsible for his training, supervision, and conduct and is alleged to have acted under color of state law. He was also responsible for enforcing the regulations of the City of Waterloo Police Department and for ensuring that the police personnel of the Police Department obey the laws of the State of Iowa and the United States of America.  As leader of police administration, Daniel Trelka is responsible for the overall administration of department operations and direction of the department's planning and research efforts, fiscal management, training initiative, and Professional Standards. He is sued in his individual and official capacities.

12.     The true names of Unknown Waterloo Police Department Officers One through Five are presently unknown to Plaintiff.  Plaintiff is informed and believes, and based upon such belief alleges, that each of said Unknown Waterloo Police Department Officers is or was at all

PETITION AND DEMAND FOR JURY TRIAL

relevant times citizens of the State of Iowa and were employees of the City of Waterloo, Iowa, and were also employees and are in some way, manner or form, and to some extent caused detriment, damage and injury to Plaintiff as alleged, and that only Defendants City of Waterloo, Iowa, Daniel Telka, and/or Kyle Law know or have reason to know the true identities and capacities of said John Does. Plaintiff brings this lawsuit against the Unknown Waterloo Police Department Officers in their individual capacities and official capacities.

13. It is further believed that the Unknown Waterloo Police Department Officers were Defendant Kyle Law's supervisors at the Waterloo, Iowa Police Department, and that only Defendants City of City of Waterloo, Iowa, Daniel Telka, and/or Kyle Law know or have reason to know the true identities and capacities of said John Does.

14. Plaintiff will seek leave of this Court to amend this Petition to include the true names of the Unknown Waterloo Police Department Officers as soon as such information becomes known to Plaintiff.

15. Each and every act of Defendants was by and under the color of law and pretense of statutes, ordinances, regulations, law, custom, and usage of the City Waterloo, Iowa, and was by virtue under the authority of the Defendant's employment or agency relationship with the City of Waterloo, Iowa, as a municipal entity and within the scope of their employment and duties.

### FACTUAL ALLEGATIONS COMMON
### TO ALL COUNTS

16. Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

PETITION AND DEMAND FOR JURY TRIAL

17.    On November 18, 2012, after 1:00 a.m., Officer Kyle Law was on routine patrol in and around the area of the New World Lounge in Waterloo, Iowa.

18.    Officer Law claimed that he parked his patrol vehicle at a diagonal angle across the street from the New World Lounge.  Either after he had parked his car or while he was parking his car and observing the bar, he saw a group of people gathering in the street in front of the New World Lounge.  He observed from his vehicle people appearing as if they were "trying to start fight or something."  He did not see any actual fighting going on.  The two groups he observed separated and Officer Law stated that he thought everybody was simply going to go home.  He then saw a group of people starting to walk across Broadway Street to the east and then stop in the northbound lanes.  He later saw another group of people coming from the parking lot at the New World Lounge and the two groups met in the middle of the two south bound lanes.

19.    He asserted that he was worried that the large group of people were in the middle of the street and could get hit by a car turning onto Broadway Street.  At this point he claimed he got on the radio and notified dispatch that a 10-10 was occurring, which is police code for a fight in progress, but the dispatch recording of this is unclear.

20.    He never activated either the vehicle's video recording camera or his audio recording equipment.  Despte his claimed concern for people potentially getting hit by a car in the middle of Broadway Street, Officer Law left his car parked in the middle of Broadway Street unattended and blocking lanes of oncoming traffic.  He never activated his top flashing lights, which not only would have warned oncoming traffic of his presence but also would have activated the vehicle's audio and video recording equipment.

PETITION AND DEMAND FOR JURY TRIAL

21.    Officer Law claimed he saw a black male with dreadlocks and a black jacket "waving a gun around."

22.    Officer Law claimed he jumped out of his vehicle with his weapon drawn and the subject with the gun started running away from him. He never advised dispatch this was occuring and never requested backup assistance from other officers.

23.    The black male was later identified as Derrick Ambrose, Jr.

24.    Steve Fichtner, a person who lives across from the New World Lounge called 911 to report the fight in front of the New World Lounge and stayed on the line throughout the chase and shooting, describing what he observed, including Officer Law, to the dispatcher in great detail.

25.    Officer Law ran after the Derrick Ambrose, Jr. and claimed he could see the gun in the subject's hand the entire time he was chasing the subject.

26.    At approxiamtely 1:43 a.m., Officer Law fired two shots from his firearm one striking Derrick Ambrose, Jr. in the back of his right leg in the upper part of the back of the calf muscle, which lodged in Mr. Ambrose's knee cap, the other entering the right side of the back of Mr. Ambrose's neck and exiting above the left eye. The trajectory of both wounds is upward and to the left. Derrick Ambrose, Jr. died at the scene from the wounds.

27.    Steve Fichtner stated he asked Officer Law why he shot Derrick Ambrose, Jr. since Ambrose had never turned toward the officer or or pointed anything at the officer.

28.    During the subsequent investigation police discovered that Derrick Ambrose, Jr. had thrown his gun over a fence while Officer Law was chasing him, which the later investigation determined was located approximately 29 feet from Derrick Ambrose, Jr.'s body.

PETITION AND DEMAND FOR JURY TRIAL

29.     Officer Law's first dispatch after leaving his vehicle was to inform dispatch that shots had been fired.  He did not identify that he was the shooter and police only learned he was the shooter after arriving at the scene.

30.     Officer Law never requested emergency medical assistance and he never checked Mr. Ambrose's body to determine if he was still alive.  Emergency medical assistance was only requested after at least five marked patrol cars had already arrived at the scene.

31.     Officers Roberts and Kye Richter were among the first officers to arrive at the shooting scene.  Officer Richter never turned on his body microphone.  While with Officer Law, Officer Roberts shut off his body microphone at 1:46 a.m. for nearly one minute, and at 1:48 a.m. Officer Roberts again turned off his body microphone for approxiamtely 45 seconds.

32.     According to official police reports and a press release issued by the Iowa Department of Criminal Investigations, Officer Law initially told other officers at the scene that Derrick Ambrose, Jr. had gone behind a tree and then turned back toward Officer Law forcing Officer Law to shoot.  During Officer Law's transport to the police station Officer Richter asked whether or not Officer Law had holstered his weapon right away.  Officer Law answered that he had kept his weapon out for a while.  Immediately after this question the audio of the recording was interrupted and discontinued for the duration of the trip to the Waterloo Police Department.  The "in car" audio recording was interrupted despite the fact that the recording system automatically records audio while it records video and the video recording was not interrupted.  This recording was interrupted despite the fact that the recording system is designed to be tamper-proof; however, there is no explanation for the interruption of the audio recording.

33.     Officer Law was not officially questioned again about the shooting for another two and one-half days.

PETITION AND DEMAND FOR JURY TRIAL

34.     When Officer Law first arrived back at the Waterloo Police Department he was met by his shift supervisor Sgt. Greg Fangman, a person within the direct command structure for Officer Law, and was told by Sgt. Fangman to not say anything about the shooting to anybody and that a lawyer was coming to assist Officer Law.

35.     Defendant City of Waterloo through its Police Department and the other Defendants did not follow its own use of force policies, among other things, not requiring Officer Law to write a report about the shooting.

36.     The Waterloo Police Department never disciplined Officer Law, in any manner whatsoever, for the shooting.

37.     The Waterloo Police Department, as a matter of policy, routinely refuses to adequately investigate or discipline officers alleged to have been involved in the illegal and/or excessive use of force so as to ratify acts of improper conduct, and/or take measures to designed to eliminate such activities from taking place, including violent acts and/or criminal activities with knowledge of their illegality and/or an officer's propensity for violence, and including acts of violence by officers against detainees and civilians.

38.     The Waterloo Police Department, as a matter of policy, routinely allows its officers to pick and choose what activities they record via audio or video recording, despite the knowledge that in order to adequately investigate or discipline officers alleged to have been involved in the illegal and/or excessive use of force, or other acts of misconduct, such evidence is not only material, but oftentimes is the best evidence available.

39.     Based upon information and belief, the practice of allowing officers to use discretion in determining when to activate and deactivate their recording devices occurs even

PETITION AND DEMAND FOR JURY TRIAL

though such practices have been discouraged by the Black Hawk County Attorney who is the County's top law enforcement officer.

## FIRST CLAIM FOR RELIEF

*Violation of Clearly Established Civil Rights Guaranteed by Iowa Constitution Article I, § 8 and the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 – Excessive Force – Kyle Law in his individual and official capacities*

40.     Plaintiff realleges the foregoing and further states as follows:

41.     Officer Kyle Law, acting under color of law, intentionally, negligently, maliciously, and with willful intent, without justification, chased and shot Derrick Ambrose, Jr., when Mr. Ambrose posed no immediate threat to the officer's or any one else's safety, also in violation of Iowa Code § 804.8.

42.     By his conduct and action, by using excessive force, Defendant Officer Law, acting under color of law, and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of his acts, caused injury and damage in violation of Derrick Ambrose, Jr.'s constitutional rights under Iowa Constitution Article I, § 8 and the Fourth Amendment to the United States Constitution.

43.     Officer Law used force in a manner that was disproportionate to the force necessary to arrest or question Derrick Ambrose, Jr. A reasonable officer, in Officer Law's situation, would have known, in light of clearly established law, that Officer Law's use of force in this situation violated Derrick Ambrose, Jr.'s Fourth Amendment rights.

44.     As a direct and proximate result of the above-mentioned unconstitutional actions of Defendants, Derrick Ambrose, Jr. was killed and sustained damages as described more fully in the Damages section of this Petition.

## SECOND CLAIM FOR RELIEF

PETITION AND DEMAND FOR JURY TRIAL

*Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983 – Unconstitutional Policy or Custom, Failure to Train, Failure to Supervise – City of Waterloo, Director of Safety Services Trelka, and John Does One through Five*

45.     Plaintiff realleges the foregoing and further states as follows:

46.     At all times material to this Petition, Defendant City of Waterloo, Defendant Trelka and John Does One through Five had policies, practices, customs, and usages that were a direct and proximate cause of the unconstitutional conduct – excessive force – alleged herein.

47.     Defendant Trelka, a final policymaker for the City of Waterloo's Police Department, had in effect, both before and at the time of the events alleged in this Petition, policies, practices, customs, and procedures that operated to deprive Derrick Ambrose, Jr. of his Constitutional rights and were the moving force behind the violation of his rights and constituted deliberate indifference as attributable to Defendant City of Waterloo itself as alleged in this claim.

48.     Defendant Trelka and the City of Waterloo through its Police Department are liable under 42 U.S.C. § 1983 because they established or authorized or tolerated policies and practices that were intended to and did encourage, endorse, and permit their agents and employees to violate the constitutional rights of Derrick Ambrose, Jr.

49.     The unconstitutional policies, practices, customs, and/or procedures of the Defendants include, but are not limited to a policy, practice, custom, or procedure of failing to properly train and supervise officers to avoid the inappropriate use of force and being deliberately indifferent to the violation by law enforcement officers of the rights of citizens.

50.     Defendant Trelka, upon information and belief, is responsible for the implementation and promulgation of official policies for the City of Waterloo Police Department.  Further, upon information and belief, Defendant Trelka is responsible for the

PETITION AND DEMAND FOR JURY TRIAL

promulgation of policies and the implementation of training to maintain an effective police force that is capable and prepared to deal with interactions with the public.

51.     Defendant Trelka was the commanding officer of Officer Law and was responsible for his training, supervision, and conduct. He was also responsible for enforcing the regulations of the City of Waterloo Police Department and for ensuring that the police personnel of the Police Department obey the laws of the State of Iowa and the United States of America, and preserve all evidence related to police misconduct. As leader of police administration, Daniel Trelka is responsible for the overall administration of department operations and direction of the department's planning and research efforts, fiscal management, training initiative, and Professional Standards.

52.     The actions of Officer Law were inappropriate for this specific situation due to inadequately trained and supervised officers. If properly trained and supervised officers had been on the scene, excessive force would not have been used.

53.     As a direct and proximate result of the above-mentioned unconstitutional actions of Defendants, Derrick Ambrose, Jr. was killed and sustained damages as described more fully in the Damages section of this Petition.

PETITION AND DEMAND FOR JURY TRIAL

## THIRD CLAIM FOR RELIEF

*Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983 – Ratification by Failing to Investigate and Remedy Excessive Force Violations – Defendants City of Waterloo, Director of Safety Services Trelka in his official capacity, and John Does One through Five in their official capacities*

54.     Plaintiff realleges the foregoing and further states as follows:

55.     At all times material to this Petition, Defendant City of Waterloo through its Police Department, acting through the individual Defendants, had policies, practices, customs, and usages that were a direct and proximate cause of the unconstitutional conduct – excessive force – alleged herein.

56.     Defendant Trelka, a final policymaker for the City of Waterloo's Police Department, had in effect, both before and at the time of the events alleged in this Petition, policies, practices, customs, and procedures that operated to deprive Derrick Ambrose, Jr. of his constitutional rights.

57.     Defendant Trelka and the City of Waterloo through its Police Department are liable under 42 U.S.C. § 1983 because they established or authorized or tolerated policies and practices that were intended to and did encourage, endorse and permit their agents and employees to violate the constitutional rights of Derrick Ambrose, Jr. and other similarly situated persons.

58.     Defendants City of Waterloo, Trelka, and the John Doe defendants within the Waterloo Police Department were, at all times relevant to this Petition, responsible for the actions of their servant and employee, Officer Law because they were in a position to direct

PETITION AND DEMAND FOR JURY TRIAL

Officer Law in the matter of performing the services he was to provide and to prescribe what particular acts should be done to accomplish a legal apprehension and arrest.

59.    The Waterloo Police Department has a facially constitutional written policy on excessive force and investigation techniques, but the policy has consistently been implemented to allow misconduct and instances of excessive force. The failure to remedy continuing misconduct with discipline constitutes ratification by Trelka and the City of Waterloo because they did not enforce the policy and did not take reasonable steps to stop the misconduct.

60.    The unconstitutional policies, practices, customs, and/or procedures of the Defendants include, but are not limited to a policy, practice, custom, or procedure of failing to discipline officers who violate the constitution or law or otherwise transgress the rights of criminal suspects during their investigations.

61.    When Officer Law first arrived back at the Waterloo Police Department he was met by his shift supervisor Sgt. Greg Fangman, a person within the direct command structure for Officer Law, and was told by Sgt. Fangman to not say anything about the shooting to anybody and that a lawyer was coming to assist Officer Law.

62.    Defendant City of Waterloo through its Police Department and the other Defendants did not follow its own use of force policies, among other things, not requiring Officer Law to write a report about the shooting.

63.    Defendants Trelka and the City of Waterloo through its Police Department acquiesced in, authorized, tolerated, affirmed, or ratified, the actions of Officer Law.

PETITION AND DEMAND FOR JURY TRIAL

64.     As a direct and proximate result of the above-mentioned unconstitutional actions of Defendants, Derrick Ambrose, Jr. was killed and sustained damages as described more fully in the Damages section of this Petition.

## FOURTH CLAIM FOR RELIEF

*42 U.S.C. § 1983  Conspiracy to Condone and Cover up Excessive Force Violations –
Defendants Kyle Law in his individual and official capacities, Director of Safety Services
Trelka in his individual and official capacities, and John Does One through Five in their
individual and official capacities*

65.    Plaintiff realleges the foregoing and further states as follows:

66.    Defendants Law and Trelka, and the John Doe defendants within the Waterloo
Police Department are accountable under 42 U.S.C. § 1983 in their individual and official
capacities because they established or authorized or tolerated policies and practices that were
intended to and did condone, endorse, and permit their agents and employees to violate the
constitutional rights of Derrick Ambrose, Jr. and other similarly situated persons.

67.    The unconstitutional policies, practices, customs, and/or procedures of the
Defendants include, but are not limited to a policy, practice, custom, or procedure of turning a
blind eye to officers' obligation to truthfully report occurrences and allowing them to falsify
information and participate in conspiracies to cover up misconduct as the facts of this case
demonstrate, in part by not requiring officers to properly use their video and audio recording
devices.

68.    Numerous excessive force violations occurred before Officer Law shot Derrick
Ambrose, Jr., which were deliberately and insufficiently investigated, in part because officers
did not properly use video and audio recording devices, and Defendant Trelka, the City of
Waterloo, and John Does One through Five took great lengths to avoid exposing instances of
excessive force.

69.    Defendants did not document or record key pieces of evidence or key discussions
directly following the shooting and in the investigations in the following days and Officer Law
never wrote a report of his recollection of the events.

PETITION AND DEMAND FOR JURY TRIAL

70.     Defendants knew of Officer Law's inconsistent statements and interpretations that did not match the recorded dispatch report and the 911 caller's real time narration.

71.     The Waterloo Police Department, and Defendant Trelka, as a matter of policy, routinely allow their officers to pick and choose what activities they record via audio or video recording, despite the knowledge that in order to adequately investigate or discipline officers alleged to have been involved in the illegal and/or excessive use of force, or other acts of misconduct, such evidence is not only material, but oftentimes is the best evidence available.

72.     Plaintiff shows a pattern of constitutional violations and deliberate indifference with regard to excessive force complaints, including municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized and that caused Derrick Ambrose, Jr.'s death. The alleged conspiracy was the moving force behind the constitutional violation that deprived Derrick Ambrose, Jr. of his life.

73.     As a direct and proximate result of the above-mentioned unconstitutional actions of Defendants, Derrick Ambrose, Jr. was killed and sustained damages as described more fully in the Damages section of this Petition.

PETITION AND DEMAND FOR JURY TRIAL

## FIFTH CLAIM FOR RELIEF

*Assault and Battery -- against Defendant Law, including respondeat superior liability against Defendant City of Waterloo*

74.  Plaintiff realleges the foregoing and further states as follows:

75.  At all relevant times, Officer Law owed a duty to Derrick Ambrose, Jr. to exercise reasonable and due care.

76.  Officer Law breached his duty to Derrick Ambrose, Jr. as a result of his willful and negligent acts and omissions.

77.  Officer Law's willful and negligent acts and omissions violated applicable use of force statutes, policies, and procedures.

78.  Officer Law's use of force against Derrick Ambrose, Jr. constituted an assault against Derrick Ambrose, Jr. because by chasing Derrick Ambrose, Jr., Officer Law committed an act that he intended to put Derrick Ambrose, Jr. in fear of physical pain or injury; Officer Law committed an act that he intended to put Derrick Ambrose, Jr. in fear of physical contact that a reasonable person would deem to be insulting or offensive and Officer Law committed a physical act that did immediately cause physical injury and pain to Derrick Ambrose, Jr. that was offensive to Derrick Ambrose, Jr.

79.  Officer Law engaged in a battery against Derrick Ambrose, Jr. when he chased Derrick Ambrose, Jr. and shot him two times from behind, with the intent to cause Derrick Ambrose, Jr. pain or injury.  Officer Law's conduct resulted in injury and harm to Derrick Ambrose, Jr. and was the proximate cause of damage to Derrick Ambrose, Jr.

80.  Officer Law engaged in harmful physical and offensive contact and force against

PETITION AND DEMAND FOR JURY TRIAL

Derrick Ambrose, Jr. that no officer could reasonably believe was necessary to effect any arrest of Derrick Ambrose, Jr. or to defend any other person from bodily harm.

81.     Officer Law used physical force against Derrick Ambrose, Jr. with the intent to cause him pain and injury. Officer Law's use of force did cause pain and injury resulting in death to Derrick Ambrose, Jr. Derrick Ambrose, Jr.'s injuries and death were the proximate result of the actions of Officer Law.

82.     Officer Law intentionally and with actual malice caused physical injury to Derrick Ambrose, Jr. Officer Law's actions constituted willful and wanton and reckless misconduct and disregard for the rights and safety of Derrick Ambrose, Jr.

83.     As a direct and proximate result of the above-mentioned unconstitutional and negligent actions of Defendants, Derrick Ambrose, Jr. was injured and deprived of the chance of survival resulting in his premature death and sustained damages as described more fully in the Damages section of this Petition.

## SIXTH CLAIM FOR RELIEF

### *Wrongful Death -- against Defendant Law, including respondeat superior liability against Defendant City of Waterloo*

84.     Plaintiff realleges the foregoing and further states as follows:

85.     At all relevant times, Officer Law owed a duty to Derrick Ambrose, Jr. to exercise reasonable and due care.

86.     Officer Law breached his duty to Derrick Ambrose, Jr. as a result of his willful and negligent acts and omissions.

PETITION AND DEMAND FOR JURY TRIAL

87.     Officer Law's willful and negligent acts and omissions violated applicable use of force statutes, policies, and procedures.

88.     Officer Law failed to act reasonably under the circumstances and his actions constituted willful and wanton and reckless misconduct and disregard for the life of Derrick Ambrose, Jr.

89.     Officer Law's use of force against Derrick Ambrose, Jr. constituted homicide as stated on the autopsy report.

90.     As a direct and proximate result of the above-mentioned unconstitutional and negligent actions of Defendants, Derrick Ambrose, Jr. was killed and deprived of the chance of survival resulting in his premature death and sustained damages as described more fully in the Damages section of this Petition.

**DAMAGES**

1.     Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

2.     As a direct and proximate result of Defendants' negligent acts and omissions set forth herein, Plaintiff sustained the following damages in excess of the jurisdictional requirement of this court:

      A.     Past physical pain and suffering in an amount to be proven at trial;

      B.     Past emotional pain and suffering in an amount to be proven at trial;

      C.     Future loss of enjoyment of life in an amount to be proven at trial;

PETITION AND DEMAND FOR JURY TRIAL

D.      The value of the amounts Derrick Ambrose, Jr. would have accumulated as a result of his own effort had he not been killed and lived out the term of his natural life;

E.      The reasonable costs of burial of Derrick Ambrose, Jr., including any interest thereon;

F.      Punitive damages against only the defendants named in their individual capacities;

G.      Attorney fees and costs for all claims for relief pursuant to 42 U.S.C. §§ 1983 and 1988;

H.      All allowable costs, expenses and fees associated with this litigation.

I.      Under Section 670.8 of the Iowa Code, Black Hawk County is obligated to indemnify Officer Law against all claims against him except for punitive damages.

WHEREFORE, Plaintiff Derrick Ambrose Sr., as Administrator of the Estate of Derrick Ambrose, Jr., prays that the Court enter judgment against Defendants, jointly and severally, in an amount supported by the allegations of this Petition, as follows:

I.      Judgment against Defendants, jointly and severally, for general damages in an amount consistent with the allegations contained herein and to be proven at trial;

II.     Judgment against Defendants, jointly and severally, for special damages in an amount consistent with the allegations contained herein and to be proven at trial;

III.    Judgment for punitive damages against each individual Defendant in an amount to be determined by the triers of fact;

COMPLAINT AND DEMAND FOR JURY TRIAL

IV.    An award of attorney fees and costs for all claims for relief within the Petition pursuant to 42 U.S.C. §§ 1983 and 1988; and

V.    Judgment for costs, interest, and such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff, Derrick Ambrose, Sr., as Administrator of the Estate of Derrick Ambrose, Jr., by and through his attorneys, hereby requests a trial by jury in the above-entitled cause of action.

/s/ Thomas P. Frerichs
Thomas P. Frerichs, BL 00103016
FRERICHS LAW OFFICE, P.C.
106 E. Fourth Street
P.O. Box 328
Waterloo, IA 50704-0328
319-236-7204 (p)
319-236-7206 (f)
tfrerichs@frerichslaw.com

COMPLAINT AND DEMAND FOR JURY TRIAL